CATHARINE J. ALLDER *vs.* SAMUEL M. JONES ET AL.

*Power to Give Property by Will to a Class of Persons—Unequal Distribution in Discretion of Donee—Gift of Legacy Charged on Land a Gift of Property.*

When a power is given to devise property to a class of persons, as the donee of the power may think proper, the gift to one of that class of a legacy charged on land devised to others is a valid execution of the power, and such legacy may also be made payable in installments.

When the donee of a power is authorized to divide by will certain property among the children of the creator of the power, as the donee thinks proper, the latter is entitled to make an unequal distribution, when there is no fraud upon the power or illusory appointment.

A testator gave to his wife all of his property, real and personal "to have and to hold during her life and to will to my children as she thinks proper at her death." In pursuance of this power the wife executed a will by which she devised to her sons Samuel and William and her daughter Margaret, all the real estate of which her husband died seized subject to the payment by them to her daughter Catharine of the sum of $1,000 in equal installments without interest in one, two, three and four years from the date of her death, and in further execution of the power she bequeathed all the personal property of which her husband died possessed to her daughter Margaret and her son William. *Held,* that the will of the wife was a valid execution of the power of appointment as against the daughter Catharine.

Appeal from a decree of the Circuit Court for Montgomery County where the following opinion was rendered by JAMES B. HENDERSON, J., and concurred in by McSHERRY, C. J.

Samuel Jones, late of Montgomery County, died in 1891, having on December 30th, 1890, made and duly executed a last will and testament which contained, among other things, the following provision: "I give and bequeath to my wife, Cecelia S. Jones, after my debts have been paid, all my property, real and personal, to have and to hold during her life and to will to my children as she thinks proper, at her death." Mrs. Cecelia S. Jones died in January, 1902, having on the 28th of April, 1899, made and duly executed a last will and

testament, in which she undertook to execute the power of appointment conferred upon her by the will of her husband, by the following provision: "In pursuance and in execution of the power vested in me under the last will and testament of my husband, Samuel Jones, late of said county, deceased, which said last will is dated December 30th, 1890, and is of record in the office of the Register of Wills of Montgomery County, in Liber R. W. C., No. 15, folio 412, I give and devise to my sons, Samuel M. Jones and Wm. K. Jones, and my daughter, Margaret A. Jones, share and share alike, in fee-simple, all of the' real estate, wheresoever situated, of which my husband, Samuel Jones, died, seized and possessed, or was in any wise entitled to, subject to the payment by them to my daughter, Catherine J. Allder, of the sum of one thousand dollars in four equal installments, payable without interest, in one, two, three and four years from the date of my death; and in further execution of the power vested in me by the will of my said husband I give and bequeath all the goods, chattels and personal property of which my husband died, possessed or was in any wise entitled to, to my daughter, Margaret A. Jones, and my son, William K. Jones, share and share alike."

The question to be determined in this case is whether this provision of Cecelia S. Jones is a valid execution of the power created by the will of her husband, Samuel Jones. The respective contentions have been presented with marked ability and we are much indebted to counsel on either side for the light thrown upon the question at issue by the clear and forcible arguments made and the authorities cited.

It is contended by the learned solicitors for the plaintiff that the discretion committed to, and confided in, the donee of the power is confined to the subject of the contemplated appointment and does not extend to the objects thereof; and, for the purpose of this case, this contention is conceded by the defendants. In other words, they assert that it is not necessary to the successful maintenance of the issue on their part that the discretion to be exercised by the donee of the power

should be determined to refer to anything else than the sub-ject-matter of the appointment.   On the face of the power under consideration there would seem to be no limit to the discretion of the donee with reference to the *quantum* of the estate or interest to be given to each appointee, except that imposed by the rule of law which prohibits illusory appoint-ments, assuming that such rule obtains and would be enforced in this State.   She was to will the property to the children of the donor as she thought proper.   No allegation that the bequest in favor of Mrs. Allder is an illusory gift is made in the bill, nor was such a contention presented at the argument. Indeed, so far as anything to the contrary is disclosed by the record, the sum of one thousand dollars secured to her may be equal to, or even more than one-fourth of the entire estate. No question, therefore, of any attempted fraud upon the rights of the appointee, or willful perversion of the intention of the donor can enter into the decision of this case.

Assuming, without deciding, that each one of the children of Samuel Jones was, under the power we have quoted, en-titled to some substantial provision for his benefit under the will of the widow, the will of Samuel Jones very closely re-sembles that of James Cathey, which is discussed in *Cathey* v. *Cathey*, 9 Humphreys, 470.   In that case, the clause creating the power is as follows: "I give and bequeath to my beloved wife, Honor B. Cathey, all my property, both real and per-sonal, for her to divide among my children as she may think best."   No attempt to execute this power was made by Mrs. Cathey, either in her lifetime or by will, but the Supreme Court of Tennessee in discussing this power, say, "The time for a distribution is left to the discretion of Mrs. Cathey. She might have made it forthwith, if she had chosen, but she had the right to enjoy the property during her life and give or di-vide it by her will.   Although the children of James Cathey, as a class, took a vested interest in the property, and of course, each of them took a vested interest, yet the *quantum* each one took remained uncertain until Mrs. Cathey should make the division; for, although she was required to divide

among all the children, she was not required to make them all equal."

So, in the will under consideration, the words, "to will to my children as she thinks proper," necessarily import that the donee of the power was to have some discretion in the division of the testator's property, which was the subject-matter thereof, and it is impossible to see how such discretion could be freely and fully exercised unless it includes the right to make an unequal distribution. In fact, we do not understand that this right is questioned.

The real substantial contention made by the bill and in the argument is, that the charge on the real estate devised by Mrs. Jones to the other three children, of one thousand dollars in favor of Mrs. Allder is not a bequest of an interest in the estate of Samuel Jones; that it is not the gift of an integral part of his estate, and for that reason is not a valid execution of the power. It must be apparent to the most casual consideration of the question that this is an extremely technical objection. By the terms of the devise of Mrs. Jones, the real and personal property are blended and treated as a whole. There is nothing in the power that requires her to will to each child a part of the realty and also a part of the personal property, or that would prevent her from giving to each child that portion of the estate which she, in the exercise of the discretion vested in her, might determine he should have either in real or personal property, as she might think proper. The donee of the power was the wife of the testator, in whose judgment and discretion it is manifest from this and another provision of the will to be hereafter averted to, he had the utmost confidence. It is probable he contemplated what actually occurred, namely, that she would survive him quite a long period of time. In the meantime, changes in the condition and value of his estate and in the position and circumstance of the beneficiaries of the power would probably occur. It was his desire to place his widow in a position to meet the exigencies that might arise from these changed conditions, that doubtless suggested to him the propriety and expediency ,

of giving her a free hand in the disposition of his property among his children. In a subsequent clause of his will he says, "I desire my wife to carry on the farm and not to sell it unless she can get a big price for it." It is clear from this, that in the event of the obtention of a large price for the farm, the conversion of his real and personal estate into money would have done no violence to the wishes of the testator. Now, suppose the proper authority had been invoked, and this conversion had been effected and the purchase-money for this property had been evidenced by a series of notes secured upon the farm, and in the execution of the power, these notes had been bequeathed to the children of Mr. Jones and one of them, for a substantial amount, had been left to Mrs. Allder, and the executors of Mrs. Jones had been directed to transfer it to her. Could it be contended that such a disposition of the estate would not have been a valid execution of the power, although the note given to Mrs. Allder may not have matured at the time of the death of her mother? And if not, is there any material difference between the bequest of a note so situated and this legacy charged on the real estate by the express provision of her will. In the power we are considering, there is no restriction upon the donee other than the requirement to appoint the entire estate; to will all the property, real and personal. Within this limitation the amount and character of the interest to be given each appointee is left to the discretion of the appointor. *Torrance* v. *Torrance*, 4 Md. 11, is authority for the position, that in the exercise of such a power, the quantity and quality of the estate to be devised are matters entirely in the discretion of the donee. And no less eminent authority on powers than Mr. Sugdon, has said that: "There is no magic in words. Estate or estates mean quantity of interest and a rent charge is clearly a portion of the entire interest in the land. Such a determination, therefore, would be authorized as well by the spirit as the words of the law." *Sugden on Powers*, sec. 490. But we are not without direct authority upon the precise question raised. In the case of *Darling* v. *Edson*, 4 Pa. Superior Court Reports, 498, it was held that a legacy

charged upon land was a valid execution of the power to divide an estate by will. This is not a decision of the Court of final resort in Pennsylvania, but it is an adjudication by a Court of respectable authority, made in a case in which five Judges sat, all of whom concurred in the decision, and the losing parties seem to have been so well satisfied with the reasons given for the conclusion reached, that no appeal was taken. And, indeed, that Court found ample support for its decision in the text writers of approved authority and in the English precedents. In the cases of *Thwaytes* v. *Dye*, 2 Vernon, 80, and *Ricketts* v. *Loftus*, 4 Younge & Collyar, Exch. 515, it was decided that the appointment of a rent charge, was a valid execution of the power to appoint a share of an estate. In the case of *Kenworthy* v. *Bate*, 6 Vesey, 793, it was held that the power to appoint real estate was well executed by a devise to trustees to sell and the appointment of the money produced by the sale. In the case of *Roberts* v. *Dixvell*, 2 Equity Cases Abr. 668, where the limitation was to such of the children of the marriage, for such estates, and in such shares and proportions as the husband and wife of the survivor of them should appoint, it was held that the devise of the entire estate to the son, subject to a charge in favor of his sister of three thousand pounds, and fifty pounds a year for maintenance until she attained the age of twenty-one years or married, was a good execution of the power.

And in the case of *Crozier* v. *Crozier*, 2 Conner & Lawson, 294, where by a settlement on the marriage certain fee-simple lands were conveyed to John Crozier for life, and after his death to such of his children by his wife Catharine, as he should by deed or will appoint, and to their heirs and assigns, and in default of such appointment, to the children equally, John Crozier, having had several children, devised these lands and others to his wife for life upon conditions that she should maintain, support and educate the children and after her decease to his son John upon the same condition, it was held that while the gift to the wife was void, the trust in favor of the children was valid.

It is true that in all the cases referred to the language defining the discretion is comprehensive and specific; but in the will of Mr. Jones, if it be conceded that the discretion to be exercised by his widow is to be restricted to the subject of the appointment and does not extend to its objects, it is impossible to perceive how proper efficacy can be given to the words "to will to my children as she thinks proper" unless she is to be allowed in her distribution of the estate of her husband the utmost latitude consistent with the rule against illusory appointment.

Nor do we think that the fact of the postponement of *the* payment of the legacy to Mrs. Allder for a considerable time subsequent to the death of Mrs. Jones, tends to invalidate the appointment.    In the case of *Darling* v. *Edson, supra,* the legacies to two of the sons were made payable, one-third in one year, and the balance in three years after the death of the testatrix, and in the opinion of the Court, this mode of payment is specially referred to and sanctioned.    And in several of the English cases, the payment of a part at least of the provision made for the appointee, was deferred for a considerable length of time after the death of the appointor.    This contention of the learned counsel for the plaintiff also ignores the well recognized distinction between the time of the vesting of the title to an estate or interest, and the period of its possession or enjoyment. *Tayloe* v. *Mosher,* 29 Md. 454; *Dulaney* v. *Middleton,* 72 Md. 75; *Von Der Horst* v. *Von Der Horst,* 88 Md. 127.    There can be no question that Mrs. Allder's title to this legacy vested immediately upon the death of Mrs. Jones.    She has the absolute and immediate right to dispose of it as she thinks proper, and should she die before the time for its payment arrives, her right to it would pass to her legal representatives, legatee or assignee.

Conceding to Mrs. Jones the amount of discretion in the distribution of this estate which we think must be allowed her in the execution of this power, we can see no reason why this feature of the appointment, which is a mere subordinate detail should be permitted to completely destroy its validity.

The cases of *Myers* v. *Safe Deposit and Trust Co.*, 73 Md. 413, and *Smith* v. *Hardesty*, 88 Md. 387, cited by the plaintiff's counsel, are clearly distinguishable from the case at hand. By the express terms of the will of Charles Myers, immediately upon the death of his wife, all the residue of his property, *i. e.*, the absolute and unqualified estate, was to pass to and become the estate and property of such of his children and grandchildren or either, as she, by her last will and testament, should nominate and appoint. In that case this discretion was restricted to the objects of the appointment. Having made the authorized selection, she had no right or power to give to the person or persons, so selected, anything less than an absolute estate. In this case the discretion is to be exercised upon the subject of the appointment, and Mrs. Jones had the right to carve it into as many and as different kinds of estates or interests as she thought proper, provided in so doing she disposes of the entire estate, and willed it to the children of Samuel Jones.

All that was decided in the case of *Smith* v. *Hardesty*, is, that under the power to devise to the child or children of the donor, the donee had no power to devise the property to a grandchild and charge the estate so devised with the payment of a legacy to the appointor's sister.

We have been able to reach no other conclusion, than that the provision in the will of Mrs. Cecilia S. Jones, we have quoted, is a valid execution of the power vested in her by the will of Samuel Jones and we so determine.

The bill of complaint must therefore be dismissed.


The cause was argued before FOWLER, BRISCOE, BOYD and SCHMUCKER, JJ.


*Arthur W. Machen* and *W. V. Bouic* (with whom was *R. B. Peter*, on the brief), for the appellant.

The power being to will to the *children*, and without right of selection being given, by employment of the word "such," or equivalent expressions importing right of choice, all the

members of the class must be included. *With* expressions importing power of selection, the right exists; *without* such expressions, no right to select can exist.

The will of Samuel Jones required the widow to make an *equal* distribution. This will be apparent when the words of the will are critically examined. If we take the first clause or member of the power, "*to will to my children,*" by itself, there can be no doubt as to its effect. It is manifest that these words, standing alone, import, first, that, under the power, the estate is to go to *all* the children; and secondly, and, with equal certainty, to those persons *equally*. The gift being to a class, the members of it must *prima facie* take in equal shares. It is this fundamental rule of construction which has given rise to the necessity for the insertion of the familiar expression "*per stirpes* not *per capita*" wherever individuals in different degrees are embraced in a legacy, and the intention is that a *per stirpes* distribution shall be made. This then being the natural and legal sense of these first words by themselves, we are to inquire, what is the qualification, or additional provision attached to them by means of the succeeding words, "as she thinks proper?" We submit, that if these latter words can reasonably convey a meaning *consistent* with the natural signification and *prima facie* effect of the previous clause such meaning, according to recognized rules of construction, should be given to them. The opinion of the Circuit Court, with reference to the qualifying words in question, says "the words necessarily import that the donee of the power was to have some discretion in the division of the testator's property which was the subject-matter thereof, and it is impossible to see that such discretion could be freely and fully exercised unless it includes the right to make an *unequal* distribution." We respectfully insist that this conclusion of the learned Court below is not sound or justified by authority.

The question, as we understand it, is this: Do the words "as she thinks proper" necessarily imply that the donee may disregard the general rule of equality? Cannot some *other* effect be reasonably given to them, conferring a large discre-

tion upon the donee, and yet consistent with the preservation of the equal rights of the testator's children, the objects of the power? Is the assumption to the contrary of the learned Judges of the Court below well founded?

Surely, consistently with dealing with all the children upon terms of equality, the power might be allowed a very considerable scope.

(1.) Under such a power the donee might direct the property to be *sold* and the proceeds of sale to be divided among the children. *Kenworthy* v. *Bate*, 6 Ves. 793.

(2.) She might direct the property to be kept entire for a certain period of time for the common enjoyment of the children, which, under conceivable circumstances, would be a reasonable and not unusual testamentary provision, and *afterwards* go to them all in sub-division.

(3.) The donee might divide the property into lots or parcels (equal in value) assigning one to each child.

(4.) She might directly devise the entire property to them as tenants in common, leaving it to them, or to the law, to make partition.

(5.) She might devise it to all the children in joint tenancy.

(6.) She might, in the event of her having in her lifetime exercised the power given in the will, "to sell the farm for a big price," make suitable provision for the collection of the purchase-money and due distribution of it or of the securities taken.

Other practicable schemes of disposition possible to the donee under such a power could be suggested, but we believe these are sufficient to show what a wide discretion would be left to the donee under the power of appointment, without interfering with that equality among the children which the provisions of the will indicate to have been in the contemplation of the testator, and which indeed would be *presumed* in the absence of clear indication of a different intent.

A number of decided cases are cited in the opinion, but none of them, we think, will be found applicable to the point now under consideration. In the will in question the trust,

or discretion, or power, to the wife is "to will to my children" —to will *to* the children, not "among" them.    The words are explicit and direct; the property is to be "willed" *to the children;* the donee is not required to "part" or "divide" it among the children.

In *Torrance* v. *Torrance*, 4 Md. 11, 23, the words were "among all or *such* of my children or their issue, in such manner and *proportion*, and for such time and estate as she shall think fit."

The English cases cited in the opinion, all, like *Torrance* v. *Torrance*, exhibit powers expressly authorizing apportionment.

In *Darling* v. *Edson*, 4 Pa. Superior Court, 498, the power was "to *divide* all my real and personal estate *among my children* as she shall think proper, giving to each *such a share as her judgment shall dictate.*"    The opinion of the Court in the last case contains the sensible observation.    "Every will must be construed in the light afforded by its own words and the surrounding circumstances, and the decisions on other wills, unless the cases are in all respects parallel, which rarely happens, may aid but not control the interpretation."    *Ib.* 503. The Judge adds: "The truth is there is an absence of controlling parallelism between any case cited and the case in hand."

Even upon the assumption that the will of Samuel Jones did not require Cecelia S. Jones to regard the rule of equality in the division among the children, the power was not well executed.

The will of the testator plainly contemplated a division among his children of the estate itself, each child to have some part of it.    Mrs. Jones has altogether disregarded this intention.    Assuming that she has authority to dispose of the estate free from any obligation to divide it among all the children she undertakes to devise the real property—admittedly constituting the bulk of the estate—to her sons, Samuel and William, and daughter, Margaret, ignoring Catherine, the appellant.    It is no sufficient answer to say that Mrs. Jones' will requires the payment to Catherine of $1,000 in four equal in-

stallments, payable, without interest, at one, two, three and four years from the date of her own death.  Such a bequest constitutes no *part or share of the estate*, although the devise of the land is made subject to its payment.

If we are right in our view that the estate, in the condition existing at the death of Mrs. Jones (no matter now as to equality or inequality of the division), is willed to the children—to all the children, there is an end of the contention, the attempted execution of the power fails, and the property must descend as the will of Samuel Jones intended it in that case to go, to all his children equally.

If we look into the details of the substitutionary provision made for the appellant Catherine in Mrs. Jones' will, the departure from the husband and father's intent becomes yet more manifest.  His will provides expressly that the whole estate, ("all of my property, real and personal,") after and subject to the provision for the widow during her life, is to pass to the testator's children *at her death.*

Catherine, according to the will of Mrs. Jones, is to get nothing *at her death.*  Even the paltry legacy of $1,000 is not payable then.  Divided up into four installments, the first of these is only to be paid one year after her death, and the last at four years.  While payment is thus postponed, none of it is to bear interest.  Can it be reasonably supposed that this is such a division of his estate as Samuel Jones intended?  Far from indicating any expectation that a discrimination might be made against his daughter Catherine, the will discloses a special thoughtfulness of her; and indeed we cannot read the whole instrument through without perceiving that she was a favorite child.  It seems to us that the Circuit Court has failed to observe how peculiarly alone this case stands, and how entirely different the language of the power in question is from the terms of the powers of appointment considered in the decisions referred to in its opinion.

A testator, who in our country makes a will, knows that the law will equitably fill up any gap which a power of appointment may fail to supply.  In almost all instances his intention

coincides with the general law, and contemplates an equal distribution among his children. Circumstances may make it desirable that some power of modal regulation should be conferred upon the surviving wife, and hence the insertion of powers of appointment. But it is never, we respectfully submit, to be presumed that when a testator gives power to his wife to will his estate at her death to his children as she may think proper, he intends to give her that unlimited power of disposition which requires the fullest expression of English conveyancing to give when the intent is to reserve to the appointor—himself the settlor and absolute owner of the property—that full power of final disposition which he would have had if no settlement had been made. We rely upon *Myers* v. *Safe Dep. & Trust Company*, 73 Md. 413, as a direct authority in favor of the appellant, and respectfully submit that it has not been satisfactorily distinguished by the learned Circuit Court.

It is admitted on the part of our adversaries that Mrs. Jones was required to give some share of the estate to the appellant Catherine. Has this been done? Is a charge such as her will makes of a sum of money upon the land devised to Samuel, William and Margaret the same thing as a share of the land? We think an affirmative answer to this question would very much have surprised Samuel Jones. It would appear incomprehensible, probably, to *any* plain man unaccustomed to legal subtleties.

*E. C. Peter* and *Arthur Peter*, for the appellees.

*Per Curiam.* For the reasons given in the opinion of the Court below the decree appealed from will be affirmed.

*Decree affirmed with costs.*

(Decided December 4th, 1903.)